UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
| Plaintiff, | JUDGE |
| v. | INDICTMENT<br>18 U.S.C. § 1349<br>18 U.S.C. §§ 1028A(a)(1) & (b)(2)<br>18 U.S.C. § 1343<br>18 U.S.C. § 510(a)(2)<br>18 U.S.C. § 641<br>18 U.S.C. § 2 |
| OUSMANE DIANE,<br>DIABA DIANE,<br>ESCO DAVIS,<br>MOHAMED DIAKITE,<br>MAMADOU DIAW,<br>ISSIAH DOOLEY,<br>LAMINE KOMARA. | |
| | FORFEITURE |
| Defendants. | |

**THE GRAND JURY CHARGES:**

## INTRODUCTION

At times relevant to this Indictment:

1. Defendants **OUSMANE DIANE, DIABA DIANE, ESCO DAVIS, MOHAMED DIAKITE, MAMADOU DIAW, ISSIAH DOOLEY,** and **LAMINE KOMARA** were residents of the Southern District of Ohio.

2. The Coronavirus Aid, Relief, and Economic Security (CARES) Act was signed into law on March 27, 2020, to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. The CARES Act provided several sources of relief, including expanding states' ability to provide unemployment insurance ("UI") for many workers impacted by the COVID-19 pandemic, even for workers who

were not ordinarily eligible for unemployment benefits. UI programs under the CARES Act included Pandemic Unemployment Assistance ("PUA"), Pandemic Emergency Unemployment Compensation ("PEUC"), and Federal Pandemic Unemployment Compensation ("FPUC").

3. Another program under the CARES Act was the Paycheck Protection Program ("PPP"), a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

4. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

5. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia for applications submitted prior to January 11, 2021, and located in Oregon for applications submitted after that date. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

6. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

7. Another source of pandemic relief was the Economic Injury Disaster Loan ("EIDL") program, through which the SBA directly provided low-interest loans to qualifying businesses. The loans were to be used for working capital and normal operating expenses such as continuation of healthcare benefits, rent, utilities, and fixed debt payments. However, EIDL proceeds could not be used for disbursements of dividends or bonuses or any disbursements to owners, partners, officers, directors, or stockholders, except when directly related to performance of services for the benefit of the company. EIDL proceeds also could not be used to expand facilities or acquire fixed assets. Like PPP loans, EIDL loans varied in size based largely on number of employees and pre-pandemic expenses.

8. One aspect of the EIDL program, the EIDL Advance, provided "advances" of up to $10,000 on EIDL loan proceeds that were in fact grants that did not have to be repaid. Disbursements of EIDL Advance funds were transmitted by SBA to the Treasury via a server located in Sterling, Virginia.

## COUNT 1
**(Conspiracy to Commit Wire Fraud—EIDL, 18 U.S.C. § 1349)**

9. Paragraphs 1 through 8 are incorporated here.

10. From in or about June 2020 and continuing thereafter until in or about June 2021, in the Southern District of Ohio and elsewhere, defendants **OUSMANE DIANE, ESCO DAVIS,**

**MOHAMED DIAKITE, MAMADOU DIAW, ISSIAH DOOLEY**, and **LAMINE KOMARA**, together with others known and unknown to the Grand Jury, knowingly and intentionally conspired and agreed to commit wire fraud; that is, with intent to defraud, to devise and intend to devise and knowingly participate in a scheme to defraud in order to deprive another of money and property by means of materially false and fraudulent pretenses, representations, promises, and material omissions—specifically, filing false EIDL applications and misusing funds received—and for the purpose of executing and attempting to execute the scheme, knowingly used and caused another to use wire communications in interstate and foreign commerce, in violation of 18 U.S.C. § 1343.

### Manner and Means of the Conspiracy

It was part of the conspiracy that:

11. **O. DIANE** submitted several of approximately 167 nearly identical EIDL applications on behalf of different individuals, using several identical pieces of business information, including gross revenues, cost of goods sold, the date the business was established, and the number of employees (the "EIDL Applications"). He frequently received a cut of the money paid to the recipients of the fraudulent EIDL Applications.

12. **DIAW** submitted a separate EIDL application in his own name, ostensibly for a business using the trade name Mamadou Diaw Travel.

13. Fraudulent EIDL Applications were filed in the names of **DAVIS, DIAKITE, DOOLEY,** and **KOMARA. DAVIS'** EIDL Applications were denied. **DIAKITE, DOOLEY,** and **KOMARA** received funds from the EIDL Applications filed in their names, and **KOMARA** passed some of his funds on to **O. DIANE**.

14. **DIAKITE, DIAW,** and **KOMARA** recruited others to provide their personally identifiable information ("PII") to receive fraudulent funds, and EIDL Applications were filed using these individuals' PII. **DIAKITE** received a portion of the EIDL funds from a person he

4

recruited and passed the funds on to a coconspirator. **DIAW** and **KOMARA** also received a portion of the EIDL funds from people they recruited.

**All in violation of 18 U.S.C. § 1349.**

## COUNT 2
### (Conspiracy to Commit Wire Fraud—PUA, 18 U.S.C. § 1349)

15. Paragraphs 1 through 8 are incorporated here.

16. From in or about May 2020 and continuing thereafter until in or about August 2021, in the Southern District of Ohio and elsewhere, defendants **OUSMANE DIANE** and **DIABA DIANE**, together with others known and unknown to the Grand Jury, knowingly and intentionally conspired and agreed to commit wire fraud; that is, with intent to defraud, to devise and intend to devise and knowingly participate in a scheme to defraud in order to deprive another of money and property by means of materially false and fraudulent pretenses, representations, promises, and material omissions—specifically, filing false PUA applications with various state workforce agencies ("SWAs") and possessing and using PUA debit cards issued as a result of the false applications—and for the purpose of executing and attempting to execute the scheme, knowingly used and caused another to use wire communications in interstate and foreign commerce, in violation of 18 U.S.C. § 1343.

### Manner and Means of the Conspiracy

17. It was part of the conspiracy that:

   a. **O. DIANE** used PII of multiple individuals to file false PUA applications with SWAs in multiple states and territories, including Ohio, California, Guam, and others;

   b. **O. DIANE** possessed PUA debit cards issued by SWAs in the names of other individuals;

5

    c. **D. DIANE** possessed and used PUA debit cards issued as a result of fraudulent PUA applications submitted by her brother, **O. DIANE**.

**All in violation of 18 U.S.C. § 1349.**

### COUNTS 3–4
### (Aggravated Identity Theft, 18 U.S.C. §§ 1028A(a)(1) & (b)(2))

18. On or about the dates set forth below, in the Southern District of Ohio, defendant **OUSMANE DIANE** did knowingly possess and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, as charged in Count 2, knowing that the means of identification belonged to another actual person.

| Count | Approximate Date | Means of Identification |
|---|---|---|
| 3 | 10/09/2020 | Name, DOB, & SSN of D.T. on PUA application |
| 4 | 01/22/2021 | Name, DOB, & SSN of B.E. on PUA application |

**All in violation of 18 U.S.C. §§ 1028A(a)(1) & (b)(2).**

### COUNTS 5–6
### (Aggravated Identity Theft, 18 U.S.C. §§ 1028A(a)(1) & (b)(2))

19. On or about the dates set forth below, in the Southern District of Ohio, defendant **DIABA DIANE** did knowingly possess and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, as charged in Count 2, knowing that the means of identification belonged to another actual person.

| Count | Approximate Date | Means of Identification |
|---|---|---|
| 5 | 06/29/2021 | Name of C.A. on PUA debit card |
| 6 | 06/29/2021 | Name of S.M. on PUA debit card |

**All in violation of 18 U.S.C. §§ 1028A(a)(1) & (b)(2).**

## COUNTS 7–8
### (Wire Fraud—PPP, 18 U.S.C. § 1343)

20. Paragraphs 1 through 8 are incorporated here.

21. Blueacorn, with headquarters in Arizona, was a third-party participating lender in the PPP. Blueacorn disbursed PPP funds through an account held at Happy State Bank.

22. **MAMADOU DIAW** had ownership and control over and was a signatory for an account at Fifth Third Bank ending x4109.

### The Scheme

23. From on or about March 19, 2021 and continuing thereafter until on or about April 6, 2021, in the Southern District of Ohio and elsewhere, defendant **MAMADOU DIAW** devised, intended to devise, and knowingly participated in a scheme to defraud in order to deprive another of money and property by means of materially false and fraudulent pretenses, representations, and promises; that is, he submitted a false PPP application.

24. It was part of the scheme that:

   a. On or about March 20, 2021, **DIAW** submitted a fraudulent PPP application to Blueacorn in the name of a purported construction business.

   b. With his PPP application, **DIAW** submitted a fake 2019 IRS Form Schedule C for the purported construction business.

   c. **DIAW** received PPP funds of approximately $20,415, on or about April 1, 2021, in his Fifth Third account ending x4109;

   d. **DIAW** withdrew $20,400 in cash from this account in four transactions between April 2 and April 6 of 2021.

25. On or about the dates set forth below, in the Southern District of Ohio, defendant **MAMADOU DIAW**, for the purpose of executing the scheme described above, and attempting to

7

do so, caused to be transmitted by means of wire communication in interstate commerce the following signals and sounds:

| Count | Approximate Date | Wire Communication |
|---|---|---|
| 7 | 03/20/21 | Online filing of fraudulent PPP application |
| 8 | 03/26/21 | Online signature of PPP loan documents |

**All in violation of 18 U.S.C. § 1343.**

## COUNT 9
### (Passing, Uttering, or Publishing Stolen Treasury Checks, 18 U.S.C. §§ 510(a)(2) & 2)

26. On or about August 19, 2020, in the Southern District of Ohio, defendant **ESCO DAVIS**, with intent to defraud, did pass, utter, publish, and aid and abet the passing, uttering, and publishing, as true a Treasury check of the United States, with a face value of $1,200, bearing a falsely made and forged endorsement, the said check being Number 33700977 over Symbol Number 4041 and dated May 22, 2020.

**In violation of 18 U.S.C. §§ 510(a)(2) and 2.**

## COUNT 10
### (Theft of Government Property, 18 U.S.C. §§ 641 & 2)

27. On or about August 19, 2020, in the Southern District of Ohio, defendant **ESCO DAVIS** willfully and knowingly stole, purloined, and converted to his use or the use of another, and aided and abetted another in willfully and knowingly stealing, purloining, and converting to his use or the use of another, goods and property of the United States of a value exceeding $1,000, that is, the depositing into a bank account controlled by **ESCO DAVIS** of a Treasury check of the United States with a face value of $1,200, the said check being Number 33700977 over Symbol Number 4041 and dated May 22, 2020.

**In violation of 18 U.S.C. §§ 641 and 2.**

## COUNT 11
### (Passing, Uttering, or Publishing Stolen Treasury Checks, 18 U.S.C. §§ 510(a)(2) & 2)

28. On or about September 9, 2020, in the Southern District of Ohio, defendant **MOHAMED DIAKITE**, with intent to defraud, did pass, utter, publish, and aid and abet the passing, uttering, and publishing, as true a Treasury check of the United States, with a face value of $2,706.75, bearing a falsely made and forged endorsement, the said check being Number 16787462 over Symbol Number 4039 and dated August 26, 2022.

**In violation of 18 U.S.C. §§ 510(a)(2) and 2.**

## COUNT 12
### (Theft of Government Property, 18 U.S.C. §§ 641 & 2)

29. On or about September 9, 2020, in the Southern District of Ohio, defendant **MOHAMED DIAKITE** willfully and knowingly stole, purloined, and converted to his use or the use of another, and aided and abetted another in willfully and knowingly stealing, purloining, and converting to his use or the use of another, goods and property of the United States of a value exceeding $1,000, that is, the depositing into a bank account controlled by **MOHAMED DIAKITE** of a Treasury check of the United States with a face value of $2,706.75, the said check being Number 16787462 over Symbol Number 4039 and dated August 26, 2022.

**In violation of 18 U.S.C. §§ 641 and 2.**

## COUNT 13
### (Theft of Government Property, 18 U.S.C. §§ 641 & 2)

30. On or about August 17, 2020, in the Southern District of Ohio, defendant **MOHAMED DIAKITE** willfully and knowingly stole, purloined, and converted to his use or the use of another, and aided and abetted another in willfully and knowingly stealing, purloining, and converting to his use or the use of another, goods and property of the United States of a value

9

exceeding $1,000, that is, the depositing into a bank account controlled by **MOHAMED DIAKITE** of a Treasury check of the United States with a face value of $1,025.25, the said check being Number 33702656 over Symbol Number 4041 and dated May 22, 2020.

**In violation of 18 U.S.C. §§ 641 and 2.**

## COUNT 14
### (Theft of Government Property, 18 U.S.C. §§ 641 & 2)

31. On or about August 18, 2020, in the Southern District of Ohio, defendant **MOHAMED DIAKITE** willfully and knowingly stole, purloined, and converted to his use or the use of another, and aided and abetted another in willfully and knowingly stealing, purloining, and converting to his use or the use of another, goods and property of the United States of a value exceeding $1,000, that is, the depositing into a bank account controlled by **MOHAMED DIAKITE** of a Treasury check of the United States with a face value of $1,065.80, the said check being Number 33737064 over Symbol Number 4041 and dated May 22, 2020.

**In violation of 18 U.S.C. §§ 641 and 2.**

## COUNT 15
### (Theft of Government Property, 18 U.S.C. §§ 641 & 2)

32. On or about August 18, 2020, in the Southern District of Ohio, defendant **MAMADOU DIAW** willfully and knowingly stole, purloined, and converted to his use or the use of another, and aided and abetted another in willfully and knowingly stealing, purloining, and converting to his use or the use of another, goods and property of the United States of a value exceeding $1,000, that is, the depositing into a bank account controlled by **MAMADOU DIAW** of a Treasury check of the United States with a face value of $1,200.00, the said check being Number 33714847 over Symbol Number 4041 and dated May 22, 2020.

**In violation of 18 U.S.C. §§ 641 and 2.**

## FORFEITURE ALLEGATION

33. The allegations of this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America.

34. Upon conviction of the any offense alleged in this Indictment, the defendants, **OUSMANE DIANE, DIABA DIANE, ESCO DAVIS, MOHAMED DIAKITE, MAMADOU DIAW, ISSIAH DOOLEY**, and **LAMINE KOMARA**, shall forfeit to the United States:

   a. Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 641 and/or 18 U.S.C. § 1343, or a conspiracy to commit such violation, in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and/or

   b. Any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of a violation of 18 U.S.C. § 510, in accordance with 18 U.S.C. § 982(a)(2)(B).

35. If any of the forfeitable property described above, as a result of any act or omission of a defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and/or 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

11

Forfeiture notice pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(2)(B), and Rule 32.2 of the Federal Rules of Criminal Procedure.

A TRUE BILL.

s/ Foreperson
**FOREPERSON**

**KENNETH L. PARKER**
United States Attorney

_____
**DAVID J. TWOMBLY (0092558)**
Assistant United States Attorney